O. K. Spears, Sr. v. Commissioner. R. H. Williams v. Commissioner.
O. K. Spears, Sr. v. Commissioner
Docket Nos. 17980, 17981.
United States Tax Court
1949 Tax Ct. Memo LEXIS 222; 8 T.C.M. (CCH) 318; T.C.M. (RIA) 49076; March 30, 1949
*222 George E. H. Goodner, Esq., Munsey Bldg., Washington, D.C., for the petitioners. Homer F. Benson, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies as follows: 1943
1944
O. K. Spears, Sr.
$1,985.65
$2,141.79
R. H. Williams
2,039.20
2,274.58 The only issue for decision in these cases is whether the Commissioner erred in taxing one-half of the income of a grocery and furniture business to these two petitioners instead of taxing one-fourth to the wife of each petitioner. Findings of Fact The petitioners are individuals who filed their returns for the taxable years with the collector of internal revenue for the district of Tennessee. Marjorie Blazer Spears is the wife of O. K. Spears, Sr. Bessie B. Williams is the wife of R. H. Williams. The wives filed separate returns for the taxable years and each reported one-fourth of the income of the business. Spears opened a grocery store in 1933. His wife assisted him in the store. The wife suggested in 1935 that they also sell used furniture in the store. The petitioner and his wife agreed that he would contribute his interest *223 in the grocery store; she would contribute $1,000, which she had borrowed from her parents, to buy furniture; and they would thenceforth operate the business of selling groceries and used furniture as equal partners. They had no written agreement. They continued to operate the store under that arrangement until March 1940. Marjorie Spears repaid, without interest, the $1,000 which she borrowed from her parents. She did that between 1937 and 1943. The repayments which she made to her parents were withdrawn from the business under circumstances and at times not shown by the record. R. H. Williams paid Spears $1,500 in cash in March 1940 for a one-half interest in the store. They did not enter into any written agreement but it was understood by them that thereafter Marjorie Spears and her husband would each have a one-fourth interest in the store and Williams and his wife would each have a one-fourth interest therein. Bessie Williams was not present when any of the arrangements between Spears and Williams were made in regard to the store. She never worked in the store and never took any part in the operation of the business. She never received any of the profits of the business. The *224 record does not show how much, if any, of the $1,500 paid by Williams to Spears was the separate property of Bessie Williams. The record does not show what Spears did with the $1,500 which he received from Williams, except that it was not retained in the business. Spears and Williams after March 1940 devoted their full time to the operation of the business. Marjorie Spears continued to work in the store regularly until near the close of 1940. Thereafter she did not work regularly but continued to work in the store for two or three afternoons a week and occasionally a full day through 1943. There were no employees and no salaries were paid. The books of the business were not introduced in evidence. No account was kept in the name of any of the alleged partners. Spears and Williams withdrew $15 a week each for living expenses. The record does not show any other specific withdrawals. Williams filed a partnership return for the business for 1942. Under Schedule J, "Partners' Shares of Income and Credits," he showed only Spears and himself as partners, each entitled to one-half of the profit shown on the return. He filed similar returns for 1943 and 1944, showing both the husbands *225 and the wives as partners, each entitled to one-fourth of the income. The Commissioner, in determining the deficiencies, held that all of the income of the business was taxable in equal proportions to the two husbands. Opinion MURDOCK, Judge: The record shows that Marjorie Spears was an equal partner with her husband in the operation of the business up to the time that Williams came in and that she never surrendered her partnership interest. She contributed some services during 1943. No good reason appears for the Commissioner's action in excluding her as a partner and taxing her share of the partnership income to her husband for 1943 and 1944. The record as a whole justifies the conclusion that she was a partner and continued to be a partner at all times material hereto. The situation in regard to Bessie Williams is different. It is not claimed that she contributed any services to the business or participated in the operation of the business. The claim in regard to her is that she contributed one-half of the $1,500 which Williams paid to Spears for a half-interest in the business in March 1940. The agreement between Williams and Spears was oral. Bessie Williams was not present *226 when the agreement was made. The whole arrangement was loose and informal. The record is not at all clear that Bessie Williams contributed any part of the $1,500 from her own separate funds. She did not testify. Williams testified that several years prior to 1940 Bessie had received $1,000 for taking care of an elderly couple in the Williams' home for which he paid the bills. His testimony would indicate that the $1,000 was deposited in a joint bank account not clearly identified in this record. The presence of the $1,000 in the bank account was not traced to March 1940, when the payment was made to Spears. Williams may have used some or all of the account for other purposes. Williams said that he always regarded his wife as his natural partner in all things. The record as a whole does not justify a finding that Bessie Williams was a partner in the business entitled to one-fourth of the earnings of that business during the taxable years. Decision will be entered under Rule 50.